UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WAYNE ARNOLD,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON TRUCK BODIES, INC.,<br><br>Defendant. | Civil Action No. 07-373-ML |

# OBJECTION

Defendant Johnson Truck Bodies, Inc. hereby objects to plaintiff's motion to remand this case to the Providence County, Rhode Island Superior Court.

In support of this objection, the Court is respectfully referred to the accompanying memorandum and affidavit.

Johnson Truck Bodies, Inc.
By its attorneys,

/s/ Mark A. Pogue

Mark A. Pogue (#3441)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
401.274.9200

Dated: November 8, 2007

## Certificate of Service

I hereby certify that on the 8th day of November, 2007 a copy of the foregoing Objection To Plaintiff's Motion To Remand was served by ECF to:

Stephen M. Litwin, Esq.
One Ship Street
Providence, RI 02903

/s/ Mark A. Pogue

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WAYNE ARNOLD,<br>Plaintiff,<br>v.<br>JOHNSON TRUCK BODIES, INC.,<br>Defendant. | Civil Action No. 07-373-ML |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION TO REMAND**

Defendant Johnson Truck Bodies, Inc. ("JTB") submits this memorandum in support of its objection to plaintiff's motion to remand this action to the Providence County, Rhode Island Superior Court.[1] As shown below, Plaintiff cannot establish to a legal certainty that the amount in controversy in this case is less than $75,000. For that reason, Plaintiff's motion to remand must be denied.

## Factual Background

### A. The Parties

JTB is a Delaware corporation with a principal place of business in Lake Rice, Wisconsin. JTB is engaged in the design and manufacture of custom engineered, high-quality molded fiberglass refrigerated truck bodies and trailers. See Johnson Counterclaim, ¶¶ 2, 5.

Plaintiff Wayne Arnold ("Plaintiff" or "Arnold") is an individual residing in Rhode Island. Complaint, ¶ 1.

[1] As explained below, on October 25, 2007, plaintiff filed an objection to JTB's petition to remove this case to this Court. JTB is treating plaintiff's objection as a motion to remand.

**B. Plaintiff's Employment With JTB**

Plaintiff formerly worked as a salesman for JTB. On December 5, 2003, Plaintiff and JTB entered into an agreement captioned Employee Invention, Secrecy Agreement And Covenant Not To Compete For Employees Of Johnson Truck Bodies, Inc. (the "Agreement"). Complaint. ¶ 5. A copy of the Agreement is attached as Exhibit A hereto.

Paragraph 8 of the Agreement prevents JTB employees such as Arnold from accepting employment with any business that sells, resells, manufactures or designs products similar to JTB for a period of 18 months following the date their employment with JTB ends. Exh. A, ¶ 8. In addition, in paragraph 5 of the Agreement, Arnold promised that upon termination of his employment with JTB, he would return to JTB, and would not retain, any documents or materials containing confidential information of JTB. Id., ¶ 5.

During 2007, the last year in which he worked for JTB, Arnold earned compensation totaling approximately $80,000. Affidavit of Alfred Miller ("Miller Aff."), ¶ 4.[2] This equates to $10,000 per month. Compensation of this magnitude, for someone with Arnold's experience in the industry, is typical. Id.

In addition, during 2007 Arnold received fringe benefit from JTB. These included participation in a 401(k) program with company contributions; health, dental, disability and life insurance; paid vacation; a company car; and reimbursement for all sales expenses. Id., ¶ 3.

JTB gave Arnold unrestricted access to its customer files while Arnold was employed by JTB. Miller Aff. ¶ 6. These customer files contained confidential information belonging to JTB. Id.

[2] Mr. Miller was traveling at the time he executed his affidavit and was unable to have the document notarized. JTB will provide a notarized affidavit at the earliest opportunity.

**D. Arnold's Resignation And Employment With Kidron, Inc.**

Arnold resigned from JTB on or around August 23, 2007. Miller Aff., ¶ 4. After his resignation, JTB learned that Arnold had been hired – effective even before he resigned from JTB – by a company called Kidron, Inc. ("Kidron"). Miller Aff., ¶ 7. Kidron is a competitor of JTB. Id. JTB immediately notified Kidron of the Agreement and protested its employment of Arnold. Id. Shortly thereafter, Arnold's employment with Kidron ended. Id.

After Arnold resigned from JTB, JTB asked Arnold to return all company property in his possession, including JTB's confidential customer files. Despite this demand, and in violation of the Agreement, Arnold has failed and refused to return JTB's customer files. When Arnold returned JTB's laptop computer to JTB, the customer file information had been deleted. Miller Aff., ¶ 6.

JTB recovered from the computer that Arnold returned a letter from Arnold to Kidron in which Arnold discusses the compensation package he wanted. Miller Aff., ¶ 9. (Arnold had attempted to delete this letter before returning his computer.) In the letter, Arnold declares: "I am presently working on over $1,000,000.00 in business that I would bring to Kidron." Id.

**E. Arnold's Lawsuit**

Plaintiff filed this action in the Superior Court for Providence County, Rhode Island on August 31, 2007. The Complaint alleges that the Agreement "by its own terms and conditions is overly broad and burdensome and thus, invalid and unenforceable." Complaint, ¶ 7. The Complaint seeks "a judgment declaring and adjudicating the respective rights and duties of Plaintiff and Defendant under [the Agreement]." Id., p. 2.

JTB removed Arnold's lawsuit to this Court based on diversity of citizenship. JTB then answered the case and asserted a counterclaim. The counterclaim asserts that Arnold breached

the Agreement by i) failing to return JTB's customer files and other confidential information and ii) misusing JTB's confidential information.

Subsequently, Arnold filed an objection to JTB's petition for removal. The objection requests that this Court remand this action to the Superior Court. As a consequence, JTB is treating Arnold's objection as a motion to remand.

## Argument

Arnold cannot demonstrate to a legal certainty that the amount in controversy in this case is less than $75,000. The employment compensation and competitive losses implicated by his lawsuit far exceed that amount. As a result, this Court may properly assert subject-matter jurisdiction over this case, and Arnold's petition to remand must be denied.

### A. The Showing Needed To Justify A Remand

When a federal court is asked to dismiss or remand a case because the jurisdictional amount has not been satisfied, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004); North American Catholic Educational Programming Foundation, Inc. v. Sprint Corporation, 2006 WL 1707670 (D.R.I. 2006) (applying identical standard to motion to remand).[3]

### B. Valuing The Amount In Controversy In A Declaratory Judgment Action

"In an action for declaratory judgment, 'the amount in controversy is measured by the value of the object of the litigation .'" Department of Recreation And Sports Of Puerto Rico v. World Boxing Association, 942 F.2d 84, 88 (1st Cir. 1991), quoting Hunt v. Washington State

[3] In his Memorandum Of Law In Support Of Plaintiff's Objection To Defendant's Petition For Removal ("Pl. Mem."), Arnold cites district court decisions from outside the First Circuit for the proposition that there is a "strict policy against removal" and a "strong presumption in favor of remand." Pl. Mem., third page. JTB's research reflects that the First Circuit has never expressed such sentiments.

Apple Advertising Comm'n, 432 U.S. 333, 347-48 (1977). Determining the value of the "object of the litigation" in a declaratory judgment suit requires consideration of several different items. First, "the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." Kheel v. Port of New York Authority, 457 F.2d 46, 49 (2nd Cir. 1972). Second, "[a] complaint may reach the jurisdictional amount by including claims for losses that are difficult to quantify, such as competitive losses." Basicomputer Corp v. Scott, 973 F.2d 507, 510 (6th Cir. 1992). Third, "these competitive losses need not have already occurred; potential as well as past damages are appropriate for consideration." Viacom v. Zebe, 882 F. Supp. 1063, 1064-65 (S.D. Fl. 1995), citing Hulsenbusch v. Davidson Rubber Co., 344 F.2d 730, 733 (8th Cir. 1965).

**C. Valuing The Amount In Controversy In Cases Involving Covenants Not To Compete**

In cases in which a former employee files a declaratory judgment action seeking to have a non-competition clause declared unenforceable, as in this case, one component of the "value of the object of the litigation" is clearly the compensation (including both salary and benefits) which the employee would have to forego were the restrictive covenant enforced. JTB has located several cases which illustrate how the value of the litigation is determined in this situation.

In Ray Mart, Inc. v. Stock Building Supply of Texas, L.P., 435 F. Supp.2d 578 (E.D.Tx. 2006), the plaintiff was subject to a two-year non-competition agreement. Like Arnold, he filed a declaratory judgment action in state court and the defendant, his former employer, removed the case to federal court. The plaintiff then moved to remand, arguing that the $75,000 amount in controversy requirement had not been met. The federal court valued the litigation by multiplying the plaintiff's salary and benefits at his former employer by the two-year term of the restrictive

covenant. Using this approach, the court concluded that "the value of the declaratory judgment far exceeds $75,000.00," and therefore denied the remand motion. Id. at 587.[4]

The setting in Component Management Service, Inc. v. America II Electronics, Inc., 2003 WL 23119152 (N.D. Tex. 2003) was similar: plaintiff was subject to a two-year non-competition agreement; like Arnold, he filed a declaratory judgment action in state court seeking to invalidate that agreement; the former employer removed the lawsuit; and the new employer moved to remand on grounds that the $75,000 jurisdictional amount was not met. The court denied the remand motion. It calculated the value of the employment compensation at stake by multiplying the annual salary paid by the new employer by the remaining term of the non-competition agreement. Id. at *3. The court concluded that the amount in controversy had been met and denied the remand motion.

**D. Application Of The Foregoing Authority Makes Clear That Arnold Cannot Demonstrate, To A Legal Certainty, That The Amount In Controversy Is Less Than $75,000**

The foregoing discussion makes clear that Arnold cannot meet his burden of demonstrating, to a legal certainty, that the amount in controversy in this case is less than $75,000. The employment compensation alone implicated by Arnold's lawsuit is sufficient to meet the jurisdictional threshold. When that sum is added to the substantial potential competitive losses facing JTB as a result of Arnold's attack on the Agreement, there is no question that the $75,000 amount in controversy requirement has been satisfied.

[4] The court noted that the plaintiff's employment compensation at his former employer included "an annual base salary of $75,000.00; participation in [the former employer's] bonus program ... four weeks' annual paid vacation; a monthly automobile or automobile allowance; and immediate vesting in benefits programs including a 401(k) plan, investment retirement account plan, life insurance, health insurance, and disability insurance." Id. at 587. These benefits are similar to the benefits Arnold enjoyed at JTB.

**A. The Value Of Arnold's Employment Compensation**

As shown above, when a plaintiff seeks a declaration that a non-competition agreement is unenforceable, courts value the employment compensation component of the lawsuit by multiplying the plaintiff's salary and benefits – from either the former employer or the prospective new one – by the term of the restrictive covenant.

Here, the Smith Affidavit establishes that Arnold was earning $10,000 per month (exclusive of fringe benefits) when he worked at JTB. Miller Aff., ¶ 4. When that amount is multiplied by the 18-month term of the restrictive covenant Arnold signed, the result is $180,000. Under this approach, therefore, the jurisdictional amount is satisfied – even without considering the value of the substantial fringe benefits Arnold enjoyed as a JTB employee.

An alternative approach is to multiply the term of the restrictive covenant by the value of the salary and benefits which the prospective new employer, Kidron, offered to Arnold. JTB does not know what salary and benefits Kidron offered to Arnold. JTB respectfully requests that, if this Court deems that information relevant to its analysis, that JTB be afforded an opportunity to take limited discovery on the issue of the compensation package Kidron offered to Arnold.

**B. The Value Of The Potential Competitive Losses Facing JTB**

Arnold's attempt to invalidate the Agreement creates two kinds of potential competitive losses for JTB. First, should he be permitted to work for the competition, there is a real danger that Arnold could divert business from JTB to his new employer. Miller Aff., ¶ 8. Second, the Agreement requires Arnold to return, and not to misuse, confidential information belonging to JTB. Arnold has failed and refused to return JTB's confidential customer lists. Id., ¶ 6. This also creates a risk of competitive losses. Id., ¶ 8.

Obviously, there is no precise way to quantify these competitive losses. But "losses that are difficult to quantify, including competitive losses" are appropriately considered in quantifying the amount in controversy. Basicomputer Corp. v. Scott, 973 F.2d at 510.

The Miller Affidavit estimates that, if Arnold succeeds in diverting only ten moderate-size customers to a new employer, this would deprive JTB of annual revenues totaling $1 million. Miller Aff., ¶ 8. JTB's concern that Arnold could divert $1 million in business is hardly an abstract one. In Arnold's own letter to Kidron – found on Arnold's computer – Arnold declares that he is "working on over $1,000,000.00 in business that I would bring to Kidron." Miller Aff., ¶ 9. That statement alone demonstrates that the amount in controversy has been met here. The Miller Affidavit further estimates that, given the detail contained in the JTB customer lists in Arnold's possession, and the enormous amount of time and effort that went into finding and obtaining business from the customers identified on those lists, a competitor would pay $10,000 to obtain them. Miller Aff., ¶ 10.

When the value of the employment compensation in issue is added to the value of the potential competitive losses facing JTB as a result of Arnold's challenge to the Agreement, the total easily exceeds $75,000. As a result, Arnold cannot meet his burden of proving, to a legal certainty, that the amount in controversy in this case is less than $75,000.

**Conclusion**

For the foregoing reasons, Arnold's petition to remand should be denied.

Johnson Truck Bodies, Inc.
By its attorneys,

/s/ Mark A. Pogue

Mark A. Pogue (#3441)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
401.274.9200

Dated: November 8, 2007

**Certificate of Service**

I hereby certify that on the 8th day of November, 2007 a copy of the foregoing Memorandum In Support of Defendant's Objection To Plaintiff's Motion To Remand was served by ECF to:

Stephen M. Litwin, Esq.
One Ship Street
Providence, RI 02903

/s/ Mark A. Pogue